UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HORGAN BROTHERS, INC., | Civil Action No. |
| Plaintiff, | 07-cv-3028 (NLH)(KMW) |
| v. | **OPINION** |
| MONROE PROPERTY, L.L.C. and MONROE RESTAURANT, INC. and TAYLOR MILLS, | |
| Defendants. | |
| GJW BUILDER, INC., | |
| Plaintiff, | |
| v. | |
| TAYLOR MILLS, MONROE RESTAURANT, INC. and MONROE PROPERTY, L.L.C., | |
| Defendants. | |

**APPEARANCES**:

Robert J. Krandel, Esquire
Flamm, Boroff & Bacine, P.C.
794 Penilyn Pike
Blue Bell, Pa 19422
    and
Robert A. Pinel, Esquire
Flamm Walton, P.C.
Westfield Corporate Center
4905 Tilghman Street, Suite 310
Allentown, Pa 18104
*Attorneys for Plaintiff Horgan Brothers, Inc.*

Todd W. Heck, Esquire
Basile & Testa, P.A.
424 Landis Avenue
Vineland, N.J. 08360
*Attorney for Plaintiff GJW Builder, Inc.*

William C. MacMillan, Esquire
Igor Sturm
101 Hopkins Avenue
P.O. Box 162
Haddonfield, N.J. 08033
*Attorney for Defendants Monroe Property, L.L.C., Monroe Restaurant, Inc., and Taylor Mills*

**HILLMAN, District Judge**

Plaintiffs, Horgan Brothers, Inc. and GJW Builder, Inc., have set forth several statutory and common law claims against Defendants Monroe Property, L.L.C., Monroe Restaurant, Inc., and Taylor Mills.[1]  Plaintiffs seek to recover for services that they had provided to Defendants as part of Defendants' renovations of their restaurant and property.  In response, Defendants move for summary judgment against Horgan Brothers.

For the following reasons, Defendants' Motion for Summary Judgment is denied.

**I.   JURISDICTION**

This Court exercises subject matter jurisdiction over the underlying claims pursuant to 28 U.S.C. § 1332.  There is complete diversity between the parties in the underlying action.  Plaintiff, Horgan Brothers, Inc., is incorporated in the

---

[1] Plaintiffs filed their respective suits against Defendants in two distinct, independent proceedings.  On October 3, 2007, the Magistrate Judge ordered that the two cases be consolidated into one proceeding.  This Opinion concerns a motion filed by Defendants against Horgan Brothers only.  Thus, unless otherwise necessary, the Court will focus only on Horgan Brothers' claims.

2

Commonwealth of Pennsylvania with its principal place of business in Harleysville, Pennsylvania.  Plaintiff, GJW Builder, Inc., is incorporated in the Commonwealth of Pennsylvania with its principal place of business in Willow Grove, Pennsylvania. Defendant, Taylor Mills, is an adult individual who is a citizen and resident of the State of New Jersey.  Defendant, Monroe Property, L.L.C., is a limited liability company whose sole member is Mills.[2]  Defendant, Monroe Restaurant, Inc., is incorporated in the State of New Jersey with its principal place of business in Williamstown, New Jersey.  Plaintiffs allege that the amount in controversy exceeds $75,000.

## II.   BACKGROUND[3]

In March 2006, Taylor Mills owned an establishment called Taylor's Bar and Grill ("the restaurant"), along with the parcel of land ("the property") upon which the restaurant was located,

---

[2] For purposes of diversity jurisdiction, "the citizenship of a limited liability company is determined by the citizenship of each of its members." Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010).

[3] The following facts are culled from the record and are largely adopted from this Court's Opinion dated June 30, 2010. Moreover, given that the present matter comes before the Court by way of Defendants' Motion for Summary Judgment, Horgan's evidence "is to be believed and all justifiable inferences are to be drawn in [its] favor." See Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

in Williamstown, New Jersey.[4]  Around that time, Mills entered into a contract with GJW Builder, Inc. ("GJW"), which agreed to perform general contracting services on the restaurant and the property.  The parties agreed that GJW would be entitled to a certain percentage "mark-up" on its subcontractors.  In turn, GJW entered into a subcontracting agreement with Horgan Brothers, Inc. ("Horgan"), which agreed to perform services at the restaurant and property.[5]  GJW's mark-up on Horgan's services was six percent.

As part of its duties, Horgan excavated the site, poured concrete, installed sewer lines, and filled and paved a parking lot.  However, according to George Wetton, the sole officer, director, and shareholder of GJW, Mills ordered extensive changes to the project and began to deal directly with Horgan.  Mills instructed Horgan to perform extensive change order work in excess of the original subcontracting agreement that Horgan had with GJW, specifically with respect to the redesign and expansion of the property's parking lot.[6]

---

[4] Mills purchased the establishment and property in January 2006, when it was called the Alpine Inn.

[5] Defendants contend that the agreements between Mills and GJW and GJW and Horgan, respectively, were each oral in nature. GJW and Horgan disagree, asserting that the agreements were consistent with written contracts, though the contracts were never signed by the parties.

[6] During his deposition, Mills denied that he ever directed any representative or employee of Horgan during construction.

Horgan performed the change order work as requested and submitted invoices to GJW and Mills with respect to the work. However, on December 12, 2006 and prior to compensating Plaintiffs for all of their services, Mills transferred title in the property to an entity known as Monroe Property, L.L.C. Further, Mills transferred ownership of his restaurant to Monroe Restaurant, Inc.[7]

In or around April 2007, Horgan filed a Construction Lien Claim in the amount of $858,153.74 against Defendants' property with the Clerk of the County of Gloucester, New Jersey. Two months later, in June 2007, Horgan filed a complaint in this Court.[8] According to the complaint, Mills is "the owner, majority shareholder or controlling party of both Monroe Restaurant and Monroe Property." (Compl. ¶ 11). As such, Horgan avers that Mills transferred the property's title and the restaurant's ownership to these entities in an effort to shield himself from any personal liability he has incurred for the

---

Mills testified that anything he had to say to Horgan or anyone else was conveyed through GJW representatives, like George Wetton.

[7] In his affidavit supporting the Motion for Summary Judgment, Mills identifies himself as "the sole member of defendant Monroe Property, L.L.C., and the sole officer, director and shareholder of Monroe Restaurant, Inc."

[8] Horgan also has filed a suit against GJW in the Court of Common Pleas in Pennsylvania, alleging that GJW breached the parties' subcontract.

unpaid change order work.  As a result of his actions and refusal to pay any of the outstanding principal balance of $858,153.74, Horgan sets forth three counts against Mills, Monroe Restaurant, and Monroe Property: (1) unjust enrichment, (2) quantum meruit, and (3) fraudulent conveyance pursuant to N.J.S.A. §§ 25:2-3 and 25:2-25.

In October 2009, Defendants filed a Motion for Summary Judgment.  More than a month later, Defendants also filed a Motion to Dismiss.  In its Opinion dated June 30, 2010, the Court granted Defendants' Motion to Dismiss, finding that Horgan did not comply with New Jersey's Corporation Business Activities Reporting Act (or, "the Act"), N.J.S.A. 14A:13-14 *et seq.* Ultimately, upon proof of Horgan's compliance with the Act and previous court orders, the Court reinstated Horgan's action against Defendants on February 4, 2011.  That same day, the Court also reinstated Defendants' Motion for Summary Judgment.

### III. DISCUSSION

#### A. Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ.

P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp.,

7

260 F.3d 228, 232 (3d Cir. 2001).

### B. Unjust Enrichment and Quantum Meruit

Defendants argue that Horgan cannot pursue its claims for unjust enrichment or quantum meruit because Horgan indisputably had a contract with GJW for the work it performed on Defendants' project, just as Defendants, through Mills, shared an agreement with GJW for its general contracting services.  According to Defendants, any remuneration Horgan expected to receive for its services were connected to its contract with GJW.  Likewise, any enrichment to Defendants' property arose from Mills' agreement with GJW.  The existence of valid contracts, Defendants argue, vitiates Horgan's recovery under its quasi-contractual theories.

Horgan contends that during the course of its work on Defendants' project, Mills repeatedly changed Horgan's work orders and Horgan and Mills began to deal directly with one another, without GJW serving as an intermediary.  Those direct dealings, says Horgan, gave rise to a separate agreement or quasi-contractual relationship between Horgan and Defendants regarding the modified work orders.  Thus, Horgan concludes that it is entitled to relief against Defendants.[9]

To establish a cause of action for unjust enrichment, a

---

[9] In support of Horgan's position, GJW asserts that during the final phase of the construction project on Defendants' property, the parties' relationships changed insofar as Mills and Horgan dealt directly with one another with respect to the redesign and expansion of the premise's parking lot.

8

plaintiff must show that "defendant[s] received a benefit and that retention of that benefit without payment would be unjust." Goldsmith v. Camden County Surrogate's Office, 975 A.2d 459, 462 (N.J. App. Div. 2009) (citation and internal quotation marks omitted). Indeed, "[u]njust enrichment is not an independent theory of liability, but is the basis for a claim of quasi-contractual liability." Id. at 463 (citation and internal quotation marks omitted). Similarly, "[t]o recover under a theory of quantum meruit, a plaintiff must establish (1) performance of services in good faith, (2) acceptance of the services by the person to whom rendered, (3) an expectation of compensation by the person performing the services, and (4) the reasonable value of the services." Rainbow Apparel, Inc. v. KCC Trading, Inc., 2010 U.S. Dist. LEXIS 51664, at *23 (D.N.J. May 26, 2010) (quoting Carney v. Hansell, 831 A.2d 128, 135 (N.J. Super. Ct. Ch. Div. 2003)). "'Quantum meruit is a quasi-contractual remedy in which a contract is implied-in-law under a theory of unjust enrichment; the contract is one that is implied in law, and not an actual contract at all.'" Flaster/Greenberg P.C. v. Brendan Airways, L.L.C., 2009 U.S. Dist. LEXIS 48653, at **20-21 (D.N.J. Jun. 10, 2009) (quoting Allegheny Gen. Hosp. v. Phillip Morris, 228 F.3d 429, 447 (3d Cir. 2000)). However, when an enforceable agreement or contract governs the parties' relationships, responsibilities, and obligations, there is no

9

basis for quasi-contractual liability.  See Van Orman v. Am. Ins. Co., 680 F.2d 301, 310 (3d Cir. 1982) (noting that pursuant to New Jersey law, "recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties"); ASCO Power Techs., L.P. v. PEPCO Techs., L.L.C., 2006 U.S. Dist. LEXIS 76368, at *23 (D.N.J. Oct. 19, 2006) (finding that a "claim for quantum meruit fails as a matter of law" when a valid contract exists between the parties).

Substantial evidence reinforces the uncontested fact that Horgan and GJW shared a contractual relationship with respect to work performed on Defendants' restaurant and property.  For instance, in a letter dated February 7, 2007, Robert Burns, the project estimator and manager for Horgan, informed Mills of a meeting at which the parties would discuss outstanding change orders and invoices.  In the letter, Burns mentioned that Horgan's change orders and invoices had been submitted to GJW.  Further, Burns acknowledged that "Horgan is under contract with GJW" and that those two parties "have been working together vigorously in order to finalize all outstanding Change Orders and Invoices for this Project since completion."  (Def. Mot., Exh. E).  Additionally, in a letter dated February 22, 2007, George Wetton of GJW informed Mills that he should have received a package from Horgan concerning its work and that GJW was submitting an invoice including its six-percent mark-up for

10

Horgan's services.  Moreover, the Construction Lien Claim filed by Horgan against Defendants' property specified that the lien amounted to "the value of work, services, material or equipment provided in accordance with a contract with G.J.W. Builders Inc." and that "[t]he work, services, materials or equipment was provided pursuant to the terms of a written contract and invoices for work performed between HORGAN BROS., INC., and G.J.W. Builders Inc."  (Def. Mot., Exh. G).[10]

Collectively, this evidence demonstrates the privity of contract shared by GJW, Mills' general contractor, and Horgan, GJW's subcontractor.  It also could prove to a jury that the subcontracting agreement between Horgan and GJW encompassed all of Horgan's services performed on Defendants' project, including the additional work to the parking lot directed by Mills.  Were the jury to construe the evidence in that manner, and therefore conclude that none of Horgan's services exceeded the scope of its subcontracting agreement with GJW, then Horgan's quasi-contractual claims against Defendants likely would fail.

However, the aforementioned documentation notwithstanding, Horgan presents some evidence to suggest that services performed in response to Mills' change orders exceeded the scope of Horgan's subcontracting agreement with GJW and created a quasi-

---

[10] Defendants also note that Horgan has asserted the applicability of its contract with GJW in seeking to enforce the construction lien in New Jersey state court.

11

contractual relationship between Horgan and Mills. Principally, Horgan relies upon Wetton's deposition testimony. Wetton testified that throughout the project on Defendants' restaurant and property, GJW handled Horgan's bills, tacking on its mark-up rate and then forwarding them to Mills. As such, Wetton stated that he paid Horgan for several of the original change orders it had submitted to GJW. However, according to Wetton, Mills or his agent visited the site frequently, continuously changing the scope of work and directing workers including Horgan's. In particular, Wetton explained that after the final parking lot drawings were generated around August 31, 2006, Mills issued the final site plan drawing to Horgan and directed their work. As a result, Wetton attests, GJW removed itself as the intermediary and ceased its mark-up of Horgan's bills, instead allowing Horgan and Mills to deal directly with one another. More specifically, Wetton testified:

> I explained to Bob Burns [of Horgan], at this point I had waived my six percent. When August 31st came and th[e site drawing] changed, I waived my six percent so Horgan would charge Taylor [Mills] for the cost. From my point of view, it really had nothing to do with us. We weren't laying out, we weren't controlling the project. We had nothing to do with this part of the project. So I went to Taylor and said, I'll waive that, and whatever cost, Horgan will bill you directly. He was fine with that.

(Wetton Dep., Pl. Opp., Exh. C, at 145-46). Also in clarification of his understanding of the parties' relationships,

12

Wetton explained:

> Everything that is not paid at this point has to do with the parking lot in the final drawing changes. From my end of it, my dealings with Horgan Brothers, I have paid what I told them I would, that I agreed to. After August 31st, at that point, Taylor [Mills] directed this parking lot.

(Id. at 95-96). Later in his deposition, in recounting a conversation with Burns, Wetton added: "I told him up front I waived the six percent[.] . . . But Taylor [Mills] will pay you. Taylor will make the final payment. That's why Bob Burns started relating to Taylor." (Id. at 151). Finally, near the end of the project, in or around December 22, 2006, Wetton recalled, Mills agreed to pay GJW a settlement for all outstanding invoices, excluding Horgan's. In particular, the agreement between Mills and GJW specified: "TAYLOR MILLS WILL PAY TO GJW BUILDER, INC. $300,000 TO SETTLE ALL OUTSTANDING INVOICES NOT INCLUDING HORGAN BROTHERS PARKING LOT INVOICES CURRENT AND FUTURE." (Pl. Opp., Exh. F). Wetton stated that Mills was supposed to deal with Horgan's bills directly.

    Wetton's testimony creates a genuine issue of material fact pertaining to the scope of Horgan's work and whether any of its services, specifically its latter work on the parking lot, extended beyond Horgan's subcontracting agreement with GJW, thereby possibly creating a quasi-contract between Horgan and Defendants. "'[A] plaintiff is not entitled to use the legal

13

fiction of quasi-contract to substitute one promisor or debtor for another.'"  MK Strategies, L.L.C. v. Ann Taylor Stores Corp., 567 F. Supp. 2d 729, 734 (D.N.J. 2008) (quoting Insulation Contracting & Supply v. Kravco, Inc., 507 A.2d 754, 759 (N.J. App. Div. 1994)).  "Nevertheless, where the primary beneficiary of a contract undertakes additional obligations to a subcontractor, the subcontractor may recover on the bases of those additional obligations from the primary beneficiary of that contract."  Id. (citing U.S. East Telecomms. V. U.S. West Commc'ns., 38 F.3d 1289, 1293 (2d Cir. 1994)); see also Onorato Constr., Inc. v. Eastman Constr. Co., 711 A.2d 1363, 1367 (N.J. App. Div. 1998).  If a fact-finder were to accept Wetton's representations and discern an agreement between Horgan and Defendants, a quasi-contractual claim may arise from that relationship.[11]  After all, the record shows that Horgan worked extensively on Defendants' premises and from those services Defendants have reaped benefits.[12]  Horgan's actions, including

---

[11] Defendants believe that Wetton's credibility concerning GJW's withdrawal from the Horgan-Mills dealings is belied by the fact that GJW still charged its six-percent mark-up on Horgan's work on the parking lot.  Indeed, if true, this fact would seem to undermine Horgan's position.  Still, the putative inconsistencies of fact are best reserved for the jury to consider and resolve.

[12] Defendants have challenged the quality of Plaintiffs' workmanship and thus filed counterclaims against them. Regardless of whatever merit those claims may have, Defendants have utilized the restaurant and property since Plaintiffs' renovations and therefore, it may be said, have benefitted to

its correspondence and lien against Defendants' property, evince its expectation that it would be paid for those services.  Again, whether Defendants or GJW are obliged to pay is a factual question for the jury.[13]

In conclusion, the Court again acknowledges that Horgan may not recover directly against Defendants based on its quasi-contractual claims if Horgan's subcontracting agreement with GJW encompasses or subsumes the same labor, materials, supplies, and services as Horgan's purported quasi-contract with Defendants.  Under those circumstances, Horgan would have to pursue its relief against GJW, not Defendants.  Nevertheless, the factual determinations central to this dispute must be presented at trial and resolved by a jury.  In the event that the jury makes findings favorable to Defendants, Horgan's claims may be extinguished.  Alternatively, a jury could find the existence of a quasi-contract entitling Horgan to recovery against Defendants.  Either way, a trial is necessary to adjudicate this matter.

Therefore, summary judgment against Horgan's claims of unjust enrichment and quantum meruit is denied.

---

some degree.

[13] Similarly, Defendants' contention that Horgan did not expect to receive remuneration directly from Defendants but rather from GJW, is a factual question.  At a minimum, Horgan expected compensation for its services, including those performed by virtue of Mills' change orders and modified plans, and understood that any payment would originate from Defendants, as illustrated by Burns' February 7, 2007 letter to Mills.

### C. Uniform Fraudulent Transfer Act

Defendants seek summary judgment against Horgan's claim under New Jersey's Uniform Fraudulent Transfer Act (or, "UFTA") on the basis that Horgan is not a creditor of Defendants, but rather a creditor of GJW. Horgan objects to Defendants' assertion that it is not a creditor and believes it has a cause of action against Defendants under the UFTA.

The Uniform Fraudulent Transfer Act, N.J.S.A. § 25:2-20 *et seq.*, "prevents a debtor from placing his or her property beyond a creditor's reach." Barsotti v. Merced, 788 A.2d 802, 808 (N.J. App. Div. 2002) (citation, internal quotation marks, and brackets omitted). In this matter, the only dispute over Horgan's UFTA claim is whether Horgan constitutes a creditor to which Defendants could be liable. The UFTA defines a "'Creditor'" as "a person who has a claim." N.J.S.A. § 25:2-21. For the reasons expressed in analyzing Horgan's claims of unjust enrichment and quantum meruit, *supra*, a genuine issue of material fact exists as to whether Horgan is a creditor of Defendants. Assuming *arguendo* a quasi-contractual relationship between Horgan and Mills, Horgan may have a viable claim under the UFTA. Defendants do not contest this conclusion or offer any legal authority to the contrary.

Therefore, given the Court's findings that a genuine issue of material fact exists as to whether or not Horgan performed

services on behalf of Defendants beyond the scope of its agreement with GJW, Defendants' sole argument against the statutory claim is rejected and summary judgment is denied.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is denied.  An Order consistent with this Opinion will be entered.


Dated: February 28, 2011          /s/ NOEL L. HILLMAN
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.

17